**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Paul A. TALIAFERRO, Defendant–Appellant.**

**Nos. 91–6372 and 92–6055.**

United States Court of Appeals, Tenth Circuit.

Nov. 16, 1992.

**1400**

Timothy D. Leonard, U.S. Atty., and Vicki Zemp Behenna, Asst. U.S. Atty., Oklahoma City, Okl., for plaintiff-appellee.

Gene Stipe and Robert K. McCune of Stipe, Gossett, Stipe, Harper, Estes, McCune and Parks, Oklahoma City, Okl., for defendant-appellant.

Before BRORBY and KELLY, Circuit Judges, and McWILLIAMS, Senior Circuit Judge.

McWILLIAMS, Senior Circuit Judge.

Counsel have indicated that oral argument of the case is not necessary and in their view would not materially assist this court in its resolution of the two appeals. After examining the briefs and appellate record, this panel agrees that oral argument would not materially assist the determination of the two appeals. The causes are, therefore, ordered submitted without oral argument. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9.

In the first count of a five-count indictment filed September 4, 1991, Paul A. Taliaferro was charged with making a material false statement on August 16, 1985, to the First National Bank of Temple, Oklahoma, a federally insured bank, for the purpose of influencing the action of the bank in making a loan to him, in violation of 18 U.S.C. §§ 1014 and 2.

In count two Taliaferro was charged with making a material false statement on December 19, 1985, to the First National Bank of Temple for the purpose of influencing the action of the bank in making a loan to him, in violation of 18 U.S.C. §§ 1014 and 2.

In count three Taliaferro was charged with making a material false statement on April 18, 1986, to the First Bank of Apache, Oklahoma, a federally insured bank, for the purpose of influencing the action of the bank in making a loan to him, in violation of 18 U.S.C. §§ 1014 and 2.

In count four Taliaferro was charged with making a material false statement on October 30, 1986, to the First National Bank of Temple, for the purpose of influencing the action of the bank in deferring the due date of a note in the amount of $98,460 made by him on December 19, 1985, in violation of 18 U.S.C. §§ 1014 and 2.

In count five Taliaferro was charged with making a false statement on or around September 15, 1987, to the Federal Deposit Insurance Corporation (FDIC) for the purpose of influencing the action of the FDIC in its debt negotiation with him, in violation of 18 U.S.C. §§ 1007 and 2. The fifth count identified the false statement as follows: "[T]he defendant submitted and caused to be submitted, a financial statement which failed to disclose the defendant's interest in farm machinery and motor vehicles, when, as the defendant well knew, he did own an interest in farm machinery and vehicles."

On September 19, 1991, Taliaferro filed a motion to dismiss the first three counts in the indictment on the ground that the offenses alleged in each of those three counts occurred more than five years prior to the return of the indictment on September 4, 1991, and that prosecution on all three counts were barred by the five-year statute of limitations provided in 18 U.S.C. § 3282.

In its brief in opposition to Taliaferro's motion to dismiss the first three counts of the indictment, the government pointed out that on August 9, 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) wherein the statute of limitations for violations of 18 U.S.C. § 1014 was extended to ten years for all violations on which the five-year statute of limitations had not already run, and that as of August 9, 1989, the five-year statute had not run on any of the three counts.

In reply to the government's brief in opposition to Taliaferro's motion to dismiss counts one, two and three, counsel recognized that on August 9, 1989, Congress extended the statute of limitations for the offenses charged in counts one, two and three from five years to ten years. In the district court, counsel conceded that if Congress had merely extended the statute of limitations for the offenses charged in the first three counts of the indictment, "the Government would be correct in its contention that an 'extension of the statute of limitations may be retroactively applied without running afoul of the *ex post facto* clause.'" Counsel stated, however, that in enacting FIRREA, Congress did more than merely extend the statute of limitations for the offenses charged in the first three counts of the indictment when it also increased the penalty for the offenses charged in the first three counts of the indictment. Counsel suggests that with 18 U.S.C. § 3293 Congress attempted to apply the enhanced penalties retroactively, which Congress clearly cannot do without running afoul of the *ex post facto* clause, and that such an attempt defeats Congress' effort in § 3293 to retroactively apply the extended statute of limitations.

On October 28, 1991, the district court denied Taliaferro's motion to dismiss the first three counts in the indictment. On November 7, 1991, Taliaferro filed a notice of appeal of that order. The notice of appeal appears in this court as No. 91–6372.

At the same time, Taliaferro asked the district court to stay the commencement of his trial, pending appeal. The motion to stay the trial was denied, and the trial commenced on November 12, 1991. A jury convicted Taliaferro on all five counts of the indictment.

On December 2, 1991, the government filed in this court a motion to dismiss appeal No. 91–6372, contending that the denial of Taliaferro's motion to dismiss the first three counts in the indictment was not a final appealable judgment. On December 9, 1991, Taliaferro filed a motion to abate appeal No. 91–6372 until such time as he could file an appeal from his conviction and sentence. On January 27, 1992, Taliaferro was sentenced to six months imprisonment on count one and imposition of sentence on counts two, three, four and five was suspended and Taliaferro was placed on probation for eighteen months and ordered to complete two hundred hours of community service. On January 31, 1992, Taliaferro filed a second notice of appeal based on errors occurring during his trial. That appeal appears in this court as No. 92–6055.

On March 4, 1992, this court ordered that the two appeals be consolidated in this court for the purposes of briefing, record and submission. We shall treat these two appeals separately, but will treat the second appeal first.

### No. 92–6055

This is the appeal from the judgment of conviction and the sentence imposed thereon. In this appeal Taliaferro asserts three grounds for reversal: (1) the district court erred in submitting counts one, two and three to the jury because the government did not meet its burden of proof, and the evidence was insufficient to support the jury's verdict finding Taliaferro guilty of those three counts; (2) the district court erred in submitting count five to the jury because the misrepresentation was not material; and (3) prosecution on the first three counts of the indictment is barred by the five-year statute of limitations, and application of the ten-year statute violates the *ex post facto* clause of the Constitution. We shall consider the statute of limitations issue first.

### 1. Statute of Limitations

■ As indicated, in the district court counsel for Taliaferro conceded that if Congress had merely retroactively applied the new ten-year statute of limitations to those offenses occurring before the effective date of the 1989 amendments where the prior five-year statute of limitations had not run, such would not violate the *ex post facto* clause.[1] It was counsel's further position in the district court that Congress also attempted to make the enhanced punishment for 18 U.S.C. § 1014 retroactive in effect, and that such an attempt, being clearly violative of the *ex post facto* clause, had the effect of rendering the congressional effort to make retroactive application of the new ten-year statute of limitations violative of the *ex post facto* clause as well. However, in this court, counsel does not pursue this particular argument and merely argues that retroactive application of the new ten-year statute alone violates Taliaferro's rights under the *ex post facto* clause of the Constitution. U.S. Const. art. I, § 9, cl. 3.

Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, § 961(*l*)(3), 103 Stat. 501; 18 U.S.C. § 3293 note, provides as follows:

> The amendments made by this subsection [§ 3293] shall apply to an offense committed before the effective date of this section [August 9, 1989], if the statute of limitations applicable to that offense under this chapter had not run as of such date.

This law clearly states that Congress intended that the extended statute of limitations (ten years) be applied to offenses occurring before August 9, 1989, where the prior statute of limitations (five years) had not run prior to August 9, 1989. We do not read § 961(*l*)(3) as a legislative attempt to apply the enhanced punishments of 18 U.S.C. § 1014 to offenses occurring prior to the date of enactment. All agree that such would violate the *ex post facto* clause. *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). Be that as it

may, there remains the question of whether there can be retroactive application of the extended statute of limitations consistent with the *ex post facto* clause of the Constitution.

Our reading of the cases bearing on this issue leads us to conclude that the application of an extended statute of limitations to offenses occurring prior to the legislative extension, where the prior and shorter statute of limitations has not run as of the date of such extension, does not violate the *ex post facto* clause. *See United States v. Powers*, 307 U.S. 214, 217–18, 59 S.Ct. 805, 807, 83 L.Ed. 1245, *reh'g denied*, 308 U.S. 631, 60 S.Ct. 66, 84 L.Ed. 526 (1939); *United States v. Madia*, 955 F.2d 538, 539–40 (8th Cir.1992) (holding that 18 U.S.C. § 3293 does not violate the *ex post facto* clause of the Constitution); *Holland v. District Court*, 831 F.2d 940, 942–43 (10th Cir.1987), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1271, 99 L.Ed.2d 482 (1988); *United States ex rel Massarella v. Elrod*, 682 F.2d 688, 689 (7th Cir.1982), *cert. denied*, 460 U.S. 1037, 103 S.Ct. 1426, 1427, 75 L.Ed.2d 787 (1983); *United States v. Richardson*, 512 F.2d 105, 106 (3d Cir.1975); *Clements v. United States*, 266 F.2d 397, 399 (9th Cir.), *cert. denied*, 359 U.S. 985, 79 S.Ct. 943, 3 L.Ed.2d 934 (1959); *Falter v. United States*, 23 F.2d 420, 425–26 (2d Cir.), *cert. denied*, 277 U.S. 590, 48 S.Ct. 528, 72 L.Ed. 1003 (1928).

We do not regard *Weaver* as dictating a contrary result. *Weaver* did not involve a statute of limitations or an attempted legislative extension thereof. *Weaver* involved a Florida statute repealing an earlier statute and reducing the amount of "gain time" for good conduct and obedience to prison rules to be deducted from a convicted prisoner's sentence. *Weaver*, 450 U.S. at 27–28, 101 S.Ct. at 963. The Supreme Court held that the statute involved in *Weaver* was unconstitutional under the *ex post facto* clause as applied to one whose crime was committed prior to the enactment of the new repealing statute. *Id.* at 35–36, 101 S.Ct. at 968. The Supreme

---

**1.** Section 3293 became effective on August 9, 1989. As of that date, the original five-year statute of limitations had not run on any of the charges against Taliaferro.

Court further held that for a criminal or penal law to be *ex post facto*, it must be retrospective, i.e., it must apply to events occurring before its enactment, and it must "disadvantage" the offender affected by it. *Id.* at 29, 101 S.Ct. at 964. In *Weaver*, the state prisoner was held to have been "disadvantaged" because his "quantum of punishment" was, in effect, increased. *Id.* at 33, 101 S.Ct. at 966 (quoting *Dobbert v. Florida*, 432 U.S. 282, 293–94, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977)).

In the instant case, we are not concerned with enhanced punishment for an offense committed before the date of the enactment of the enhanced punishment provision. We are, however, concerned with a statute which increases the statute of limitations from five to ten years for an offense committed prior to the enactment of the increased limitation where the prior five-year statute had not already run. In this regard, we are in accord with the rationale in *Falter* where Judge Learned Hand, speaking for the court, stated:

> Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it.

*Falter*, 23 F.2d at 425–26.

In the instant case, Taliaferro was not safe from government pursuit on any of his statutory violations. Taliaferro's earliest charge, count one, alleged a violation on August 16, 1985. When the new ten-year statute of limitations became effective on August 9, 1989, Taliaferro had more than a year before he was free from government pursuit for this violation. For his other charges, the government had even more time to pursue him. Since the original statute of limitations had not run on any of Taliaferro's statutory violations and Con-gress has the authority to extend a statute of limitations where the original time period has not run, 18 U.S.C. § 3293 does not violate the *ex post facto* clause of the Constitution. *See Madia*, 955 F.2d at 540; *Richardson*, 512 F.2d at 106; *Falter*, 23 F.2d at 425–26.

## 2. Sufficiency of the Evidence

■ Counsel argues that the evidence is insufficient to support Taliaferro's convictions on counts one, two and three, and that the district court erred in submitting those counts to the jury. Counts one, two and three charge violations of 18 U.S.C. § 1014. At the time the offenses charged in the first three counts were allegedly committed, § 1014 read as follows:

> Whoever, knowingly makes any false statement or report, . . . for the purpose of influencing in any way the action of . . . any bank the deposits of which are insured by the Federal Deposit Insurance Corporation, . . . upon any application, advance, discount, purchase, purchase agreement, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, . . . shall be fined not more than $5,000 or imprisoned not more than two years, or both.

In *United States v. Haddock*, 956 F.2d 1534, 1549 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992), we identified the essential elements of a § 1014 violation as follows: "(1) that defendant made a false statement to a [federally insured] bank; (2) that [the defendant] did so for the purpose of influencing the bank's action; (3) that the statement was false as to a material fact; and (4) that the defendant made the false statements knowingly." *See also United States v. Smith*, 838 F.2d 436, 439 (10th Cir.1988), *cert. denied*, 490 U.S. 1036, 109 S.Ct. 1935, 104 L.Ed.2d 407 (1989).

As concerns count one, the government's evidence showed that on August 16, 1985, Taliaferro obtained a loan of $77,130 from the First National Bank of Temple and that he stated that he was going to buy cattle. In connection with this transaction, Taliaf-

erro executed a note payable to First National Bank of Temple in which the collateral was identified as 243 head of cattle, and in addition, Taliaferro executed a security agreement and a UCC–1 which gave the bank a perfected security interest in 243 head of cattle. The government's evidence showed that the proceeds of this loan were not used to buy cattle, but were used by Taliaferro to pay his indebtedness at the American National Bank of Lawton.

As to count two, the government's evidence showed that on December 19, 1985, Taliaferro obtained a loan of $98,460 from the First National Bank of Temple, and that again Taliaferro stated the loan proceeds would be used to purchase cattle. As with the first loan, Taliaferro executed a note, a security agreement and a UCC–1 pledging 223 head of cattle as collateral. However, it was stipulated that Taliaferro used the proceeds of this loan to pay his indebtedness at the Security Bank and Trust of Lawton.

Furthermore, on December 20, 1985, Taliaferro deposited the December 19, 1985, loan proceeds into his account at First National Bank of Temple. On that same day, he wrote a personal check in the amount of $98,220 [2] from his account in the First National Bank of Temple to a Henry Hardzog. In the memo section of the check to Henry Hardzog, Taliaferro wrote "cattle." However, Taliaferro purchased no cattle from Henry Hardzog, and, at Taliaferro's request, Henry Hardzog wrote a check payable to Taliaferro in the amount of $98,220, which the latter then deposited into his account at Security Bank and Trust of Lawton. Taliaferro's check to Hardzog cleared the First National Bank of Temple, and a bank officer testified that when she saw the check with the notation "cattle" written in the memo section, she believed Taliaferro had actually purchased cattle with the loan proceeds. Further, Taliaferro was questioned some time later by a representative of the FDIC about this check exchange with Henry Hardzog, and, according to that witness, Taliaferro stated that it was "just a coverup." Additionally, a former representative of the First National Bank of Temple testified that he conferred with Taliaferro in October, 1986, concerning deferred payment on the unpaid note of December 19, 1985, and that Taliaferro stated that the cattle given as security were "in Garfield County" on his partner's property. Yet, no such cattle existed. (*See* Fn. 4)

Count three concerns a loan of $136,000, which Taliaferro obtained on April 18, 1986, from the First Bank of Apache. In connection with this loan, Taliaferro again stated to bank officials that the loan proceeds would be used to buy cattle. In connection with this loan, Taliaferro again executed a note and security agreement which identified the collateral as 360 head of cattle. It is stipulated that he did not purchase cattle, but used the loan proceeds to pay a part of his indebtedness to the First National Bank of Temple, the Security National Bank, and the American National Bank.

In September, 1986, the loan officer at First Bank of Apache who had handled the loan, made inquiry of Taliaferro concerning the cattle he had ostensibly purchased with the April 18, 1986, loan proceeds and made plans to inspect the cattle. The loan officer, on September 28, 1986, drove some eighty-five miles to inspect the cattle. After arriving at Taliaferro's house, however, he was told that Taliaferro would not be able to meet him.

Taliaferro testified at trial that he believed the loans forming the basis for the first two counts in the indictment were unsecured loans and that he did not make any representation to anyone at the First National Bank of Temple about purchasing cattle and using them as security for the loans. He stated that he signed the notes and the security interests in blank, and that someone else must have filled them in.[3]

---

**2.** There is nothing in the record before this court that explains the discrepancy between the amount of the loan, $98,460, and the amount of the personal check, $98,220.

**3.** Taliaferro testified that he dealt with one Larry White at the First National Bank of Temple. Larry White was not called as a witness by either government counsel or defense counsel. Larry White was apparently a defendant in

As concerns the loan which formed the basis for count three, Taliaferro testified that he did initially intend to buy cattle with the loan proceeds, but that the sale fell through. He stated that he did not so advise the loan officer who actually made the loan of this fact, but that he did tell the bank president. The latter was not called as a witness by either side.

Without prolonging the matter further, we believe the evidence supports the jury's guilty verdicts in the first three counts of the indictment. Taliaferro's denial of wrongdoing didn't resolve the matter, and the case, in our view, was properly submitted to the jury for its determination.[4]

### 3. Materiality

■ Count five charged a violation of 18 U.S.C. § 1007. At the time of this offense, § 1007 read as follows:

Whoever ... for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation, makes any statement, knowing it to be false ... shall be fined not more than $5,000 or imprisoned not more than two years, or both.

In *United States v. Haddock*, 956 F.2d 1534, 1542 (10th Cir.1992), we stated that the essential elements of a § 1007 violation were: (1) the defendant makes a false statement; (2) the defendant knows the statement is false; and (3) the statement is made for the purpose of obtaining a loan from the FDIC or otherwise influencing the FDIC's actions.

The government's evidence as it relates to count five was that in November, 1986, the First National Bank of Temple failed, and the FDIC assumed the bank's assets, including Taliaferro's note of December 19, 1985, for $98,460, which was then in default. In connection with the FDIC's attempt to collect the balance of his $98,460 note, Taliaferro was instructed by an employee of the FDIC to list everything he owned. The evidence showed that on September 15, 1987, Taliaferro submitted a financial statement, but did not list certain farm machinery and motor vehicles. The government asserts that Taliaferro owned these assets when he submitted this financial statement. Taliaferro testified at trial, however, that he did not actually own the farm machinery and motor vehicles since he had a lease-purchase agreement with his son. But, there was also testimony that on August 28, 1987, Taliaferro signed a financial statement listing farm machinery and motor vehicles as assets when he sought refinancing of his $136,000 loan from the First Bank of Apache. Again, without further belaboring the matter, our study of the record convinces us that there was sufficient evidence for the district court to submit count five to the jury.[5]

### No. 91–6372

The issues in this appeal are whether the district court's order denying Taliaferro's motion to dismiss the first three counts in the indictment is a final appealable judgment, and, if so, whether the congressional extension of the statute of limitations applicable to 18 U.S.C. § 1014 from five years to ten years violates the *ex post facto* clause. Having determined in Taliaferro's direct

---

criminal and civil proceedings arising out of his conduct at the First National Bank of Temple. However, the government did call two former employees of the First National Bank of Temple who testified concerning Taliaferro's two loans from the bank.

4. Taliaferro's conviction on count four is not challenged on appeal. In that count, Taliaferro was charged with making a material false statement on October 30, 1986, to the First National Bank of Temple for the purpose of influencing the action of the bank in deferring the due date of the note for $98,460 made by Taliaferro on December 19, 1985. The government's evidence showed that Taliaferro told the bank's represen-

tative that the cattle which he had purchased with the loan proceeds were pastured near Enid, Oklahoma, and were in good health, when in fact there were no such cattle.

5. Taliaferro argues that the government failed to show that his failure to list farm machinery and motor vehicles in his financial statement to FDIC was a material misrepresentation or omission. The jury was apparently instructed that under § 1007 a false statement must be material, and, by its verdict, the jury found that it was material. Hence, we need not here decide whether materiality is an essential element of § 1007.

appeal of his conviction and sentence (No. 92–6055) that the congressional extension of the statute of limitations, 18 U.S.C. § 3293, did not violate the *ex post facto* clause of the Constitution, this particular appeal, No. 91–6372, becomes moot and will be dismissed. In such circumstance, we need not determine whether the order denying Taliaferro's motion to dismiss the first three counts in the indictment on *ex post facto* grounds is a final appealable judgment.

In No. 92–6055, the judgment is affirmed. In No. 91–6372, the appeal is dismissed.