**FEDERAL DEPOSIT INSURANCE CORPORATION, as sole receiver for Montana Federal Savings Bank of Kalispell, Montana, Plaintiff–Counter–Defendant–Third Party Defendant–Appellee,**

v.

**Roger CRAFT, a/k/a/ Roger L. Craft and Norma J. Craft, Defendants–Counter–Claimants–Third Party Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Office of Thrift Supervision, as successor to Federal Home Loan Bank Board, Third Party Defendant–Appellee.**

No. 93–35138.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1994.

Submission Denied June 20, 1994.

Resubmitted Sept. 18, 1998.

Decided Sept. 25, 1998.

---

[*] The Honorable John M. Roll, United States District Judge for District of Arizona, sitting by designation.

Edmund P. Sedivy, Jr., Lynda S. Weaver, Morrow, Sedivy & Bennett, Bozeman, Montana, for Crafts, et al.

Miriam S. Aguiar, Joel Eichengrun, FDIC, San Jose, California, for FDIC.

John F. Daly, Jonathan R. Siegel, United States Department of Justice, Washington, D.C., for United States.

Before: PREGERSON,* BRUNETTI and KLEINFELD, Circuit Judges.

PER CURIAM:

Roger Craft, a real estate developer, and his wife Norma Craft, appeal the district court's judgment following a bench trial that resulted in a judgment in favor of the Federal Deposit Insurance Corporation (FDIC), as receiver for Montana Federal Savings Bank. The FDIC initiated the action to collect on six promissory notes and to foreclose on five Montana properties securing those notes.

The Crafts asserted that they were excused from repaying the notes because the FDIC wrongfully repudiated a loan commitment made by Montana Federal. The Crafts also counterclaimed that the United States had tortiously breached an implied covenant of good faith and fair dealing. The Crafts' affirmative defenses were rejected and their counterclaims were dismissed with prejudice.

We affirm as to the result, however for different reasons. *Kimes v. Stone*, 84 F.3d 1121, 1126 (9th Cir.1996) (we may affirm the district court's determination on a different basis).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Montana Federal was a federally-chartered savings and loan institution insured by the Federal Savings and Loan Insurance Corporation (FSLIC). From 1983, until it was put into receivership by the FSLIC on August 16, 1985, Montana Federal operated under the close supervision of the Federal Home Loan Bank Board (FHLBB) of Seattle, pursuant to a series of consent resolutions entered into by Montana Federal's board of directors.

One of Montana Federal's troubled assets was a development of time-share condominiums known as the Lakeview Resort. Montana Federal was the beneficiary of several deeds of trust from Sidney Smith who was the developer of Lakeview. Foreclosure on Smith's deeds of trust was postponed pending Montana Federal's pursuit of an acceptable workout for the resort project.

Montana Federal negotiated a workout plan with Roger Craft which was subject to approval by the FHLBB. The final workout agreement (referred to as the "Commitment Letter") provided for two phases-Phase A

---

* Judge Pregerson has been drawn to replace Judge Poole. Judge Pregerson has read the briefs, reviewed the record, and has listened to the oral argument tape.

and Phase B. This agreement was entered into on May 3, 1985.

Phase A was to be completed within six months. Pursuant to the Commitment Letter, Roger Craft acquired Sid Smith's unsold time-share intervals, and assumed Smith's secured obligations on $250,000 of notes (principal). With the commitment of $400,000 in funding from Montana Federal, Craft agreed to complete the renovation and construction of Lakeview, and market individual time-shares in the project. The $400,000 funding of Phase A was to be secured by Lakeview parcels, and possibly other real estate.

The Lakeview time-share interests were then to be marketed to Phase B investors, i.e., investors willing to provide non-Lakeview property as security for the funding of the project in return for Lakeview time-share interests. At the completion of Phase A, all of Craft's notes were to be rolled over into fifteen-year notes secured by the property pledged by Phase B investors. Under this plan, Montana Federal would eventually have a return on its Lakeview project from notes secured by non-Lakeview property.

The Phase A funding was evidenced by promissory notes of $48,000, $36,000, $60,000, $69,000 issued on May 29, June 5, July 2 and August 6, 1985, respectively, executed by Craft or by Craft and his wife, Norma Craft. As security for each of these notes, Craft or Craft and his wife, Norma Craft, executed four deeds of trust ("the Indentures") on four non-Lakeview properties. By the terms of the Commitment Letter, Craft also assumed two deeds of trust and two promissory notes of Sidney Smith.

Before Craft could realize all of the $400,000 loan commitment, however, Montana Federal was declared insolvent, and an FSLIC receiver was appointed on August 16, 1985. That same day, the FSLIC repudiated all of Montana Federal's obligations, including its loan commitment to Craft. At that time, none of the notes had come due. Nonetheless, without the funding to complete Phase A, and a cloud over Montana Federal, Craft could not attract Phase B investors. Craft eventually defaulted on his obligations to Montana Federal.

Following Craft's default on his six notes, the receiver began six separate proceedings to foreclose on the Indentures that Craft had executed as security. After exhausting his administrative remedies, Craft filed a de novo action in federal court against the FSLIC and the United States. These actions were consolidated on September 5, 1989. Just prior to the consolidation of these actions, however, Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 83, 354 (1989). FIRREA abolished the FSLIC and FHLBB, and substituted the Federal Deposit Insurance Corporation ("FDIC") and Resolution Trust Corporation in their places. Thus, as the successor to the FSLIC, the FDIC became receiver for Montana Federal and was substituted in this action by operation of law.

A week-long bench trial was conducted in April 1992 before a federal magistrate judge, who ordered a decree of foreclosure and sale in favor of the FDIC. In addition, all of the Crafts' third-party complaints and counterclaims were dismissed with prejudice on January 13, 1993. The Magistrate also held as a matter of law that the substantive provisions of FIRREA-specifically, the damage limitations for repudiated contracts-applied retroactively to this case. The Crafts filed a timely appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

### A. Standard of Review

■ In an appeal from a verdict following a non-jury trial the district court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. *Lozier v. Auto Owners Ins. Co.*, 951 F.2d 251, 253 (9th Cir.1991). The district court's findings are binding unless clearly erroneous. "As long as findings are plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if convinced it would have reached a different result." *United States v. Gila Valley Irrigation District*, 961 F.2d 1432, 1434 (9th Cir.1992).

## B. Crafts' Claims for Damages Based on the Receiver's Repudiation of Montana Federal's Loan Commitment

The Crafts argue that they are entitled to damages based on the FSLIC's repudiation of the Commitment Letter. They contend that because the receiver abused its discretion by repudiating the loan commitment, they are entitled to offset damages for breach of contract against the amounts owed under the notes. The Crafts argue further that they are entitled to damages for lost profits, lost opportunity, and pain and suffering. We address each argument in turn.

### 1. Whether the Receiver's Repudiation was Proper.

■ The Crafts argue that the receiver abused its discretion by repudiating the loan commitment without making a specific finding that the obligation was burdensome to the institution. The district court found, however, that "[t]he ... Commitment Letter was ... deemed burdensome by the Receiver," and that its repudiation "promoted the orderly administration by the Receiver of the Bank's affairs ...". As such, the district court concluded as a matter of law that the Commitment Letter was repudiated in the lawful exercise of the receiver's discretion.

Courts have traditionally recognized the power of receivers to repudiate burdensome contracts. See, e.g. RTC v. CedarMinn Bldg. Ltd. Partnership, 956 F.2d 1446, 1453 (8th Cir.1992). At the time of the repudiation, a FSLIC receiver was endowed with statutory authority under the National Housing Act "to do all ... things that may be necessary" to collect failed thrift assets, subject to FHLBB regulation. 12 U.S.C. § 1729(d) (1982). FHLBB regulations at the time gave the receiver and conservator power to "repudiate any lease or contract he consider[ed] burdensome." 12 C.F.R. §§ 548.2(k), 549.3(a) (1985); See also CedarMinn Bldg., 956 F.2d at 1453 (discussing power of FDIC and FSLIC receivers and conservators to repudiate agreements prior to FIRREA).[1]

When the FSLIC took over Montana Federal's affairs, it repudiated all contracts and commitments. The record indicates that the FSLIC receivership had no new source of capital, and that funding of new loans could only be accomplished through liquidation.

■ The Crafts also argue that the receiver abused its discretion by not making specific findings regarding the Commitment Letter, and for not considering the lack of alternative financing for time-share condominiums in the area. Nothing in the FHLBB or FSLIC statutes or regulations at the time of the repudiation, and nothing in FIRREA, however, suggests that individualized findings are necessary in order to repudiate commitments.[2] Thus, we cannot conclude that the district court's findings were clearly erroneous.

### 2. Whether the Crafts May Recover Set-off.

■ The Crafts claim that they are entitled to offset the amounts owed on the notes with damages for the FSLIC's repudiation of the loan commitment. In support of this argument, the Crafts maintain that their workout of Lakeview with the funding commitment from Montana Federal was a contract for the sale of real property.

Title 12 U.S.C. § 1821(e)(6), another recently enacted FIRREA provision, provides that purchasers of real property whose repudiated contracts comply with the writing requirements of 12 U.S.C. § 1823(e), and who

---

1. Although FIRREA abolished the FSLIC, the powers of receivership and conservatorship over federally insured institutions shifted to the Resolution Trust Corporation and the FDIC. Id. One of FIRREA's provisions, 12 U.S.C. § 1821(e), gives the receiver the right to repudiate any contract that the bank may have made before receivership if the FDIC receiver, "in its discretion" decides that performance will be "burdensome" and that disavowing the obligation will "promote the orderly administration" of the failed institution's affairs.

2. Without deciding the retroactivity of the provision, we note that the Crafts' argument regarding analysis of local credit markets under 12 U.S.C. § 1821(d)(2)(E), is misguided because this FIRREA provision only applies to the decision to liquidate (i.e., enter into receivership), not the subsequent decision of the receiver to repudiate burdensome contracts.

remain in possession of the property while continuing to make payments due under the contract after repudiation, may offset any such payments by any damages which accrue after the repudiation.

Relying on this provision, the Crafts assert that they are entitled to offset any claims made by the Receiver against them for default on the notes. However, the district court made a specific factual finding that "[n]either the Commitment Letter nor the Notes and Trust Indentures are contracts for the sale of real property." The Crafts argue that this finding was clearly erroneous because the Commitment Letter required that they assume the obligations of Sid Smith.

Although the Commitment Letter cross references the assumed obligations of Sid Smith, those references do not witness a sale of real property by Montana Federal to the Crafts. In fact, Craft acquired title to the Lakeview property from Smith. Thus, the Craft's argument for clear error is merely a different characterization of an entirely plausible factual conclusion reached by the district court and, therefore, is without merit on appeal. *See, e.g. Gila Valley*, 961 F.2d at 1434. We will not reverse so long as findings of fact are plausible in light of the record viewed in its entirety, even if we are convinced we would have reached a different result. Because the district court plausibly determined that the Commitment Letter was not a contract for the sale of real property, we conclude that the offset provisions of 12 U.S.C. § 1821(e)(6) do not apply.

■ Nonetheless, the Crafts are entitled to set-off. Our en banc decision in *Murphy v. FDIC*, 38 F.3d 1490 (9th Cir.1994), establishes that the right to set-off arises "independently of contract," that is, that the promisor on an unpaid note is entitled as a matter of law to set-off the bank's duty to him. *Id.* at 1504. The "set-off arises independently of contract, as a matter of equity, where a person was both a creditor of and a debtor to an insolvent bank." *Id.* at 1504. We are obligated to give Craft the benefit of the doctrine we held to apply in favor of the similarly situated promisor in *Murphy*. The law is plain that a receiver may repudiate such contractual obligations as Montana Fed-

eral Savings Bank's contract with Murphy to provide him with take-out financing, and it is also plain that when it repudiates, it is liable for "actual direct compensatory damages" carefully and precisely set out in the statute. *See* 18 U.S.C. § 1821(e)(1) and (e)(3). It is not necessary to get to the sale of real estate sections of the statute to find the FDIC's duty to pay damages. The repudiation section, 12 U.S.C. § 1821(e), provides for repudiation in subsection 1 and for damages in subsection 3. That is consistent with the requirement in section (d)(2)(H) that the FDIC pay "all valid obligations."

### 3. Whether 12 U.S.C. § 1821(e)(3) Applies Retroactively and its Application to this Case.

■ Damages available as a result of the FDIC's repudiation are expressly governed by 12 U.S.C. § 1821(e)(3), a FIRREA provision. Section 1821(e)(3) limits claims for damages for repudiation to actual direct compensatory damages at the time of repudiation, and exempts the receiver from claims for punitive or exemplary damages, damages for lost profit, lost opportunity, or pain and suffering. The district court held that § 1821(e)(3) precluded the Crafts' claims for damages even though it was enacted after all the events occurred which gave rise to the instant suit.

We previously held that FIRREA's statute of limitations provision, as procedural rather than substantive, applied retroactively. *See FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 486–87 (9th Cir.1991) (following *Bradley v. School Bd. of the City of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), which held that a court should apply the law in effect at the time it renders its decision unless "there is statutory direction or legislative history to the contrary"). However, the Supreme Court has clarified the test for the retroactive effect of Congressional action in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In *Landgraf*, the Court noted that a statute only truly operates retroactively if applying it would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose

new duties with respect to transactions already completed." *Id.* 114 S.Ct. at 1505; *see also RTC v. Ford Motor Credit Corp.,* 30 F.3d 1384, 1387–88 (11th Cir.1994)(analyzing retroactivity of lease repudiation damage limitation provision of FIRREA).

Thus, like other courts that have analyzed similar FIRREA provisions, we must address prior banking law to determine whether application of the damage limitation provisions of § 1821(e)(3) would have the retroactive effect defined in *Landgraf.*[3] *See, e.g., Ford Motor Credit,* 30 F.3d at 1388 (holding that FIRREA's damage limitations for repudiation of leases worked no substantive change in the law, and thus, their application was not retroactive). We conclude that, in the Crafts' case, it would not.

Prior to FIRREA, courts adopted a so-called "provability test" in order to determine the types of claims available against the FDIC in its capacity as receiver for a failed bank. Under the common law test, a claim was deemed provable if: (1) it existed before the bank's insolvency and did not depend on any new contractual obligations arising thereafter; (2) liability on the claim was absolute and certain in amount when suit was filed; and (3) the claim was made in a timely manner. *See Dababneh v. FDIC,* 971 F.2d 428, 434 (10th Cir.1992); *First Empire Bank–New York v. FDIC,* 572 F.2d 1361, 1367–69 (9th Cir.1978).

The first prong of the provability test requires that the claim must arise from a contract in existence prior to insolvency. *See, e.g., McMillian,* 81 F.3d at 1047 (holding that provability rule was satisfied in case of employee severance contract that existed before Bank's insolvency); *accord First Empire,* 572 F.2d at 1367 (concluding that standby letters of credit in existence before insolvency were provable). This aspect of the test is not at issue here because the Commitment Letter undisputedly existed before Montana Federal was declared insolvent. We also

note that the third element of the common law provability test-timeliness of the claim-is similarly not an issue.

The second prong of the provability test is most problematic for the Crafts given the nature of the damages they claim. In *First Empire,* we determined that liability on the standby letters of credit at issue there was "absolute and certain in amount" at the time suit was filed against the receiver because the principal obligors had already defaulted on their loan obligations. *Id.* at 1369. The Crafts urge a comparison between the standby letters of credit analyzed in *First Empire* and the Commitment Letter in that their contract with Montana Federal also created an absolute obligation upon which payment must be made "upon presentation of the proper documents." *Id.* at 1366. However, comparison of this similar characteristic of the two contracts is unavailing because the key to the provability conclusion in *First Empire* was the certainty in the amount of damages sought. *Id.* at 1369 (acknowledging the common law rule that claims which are certain or capable of being made certain through recognized methods of computation are provable); *accord McMillian,* 81 F.3d at 1050 (employee's claim under severance plan was easily calculable and thus provable although contingent at time of receivership); *Monrad v. FDIC,* 62 F.3d 1169, 1174 (9th Cir.1995)(holding that severance payments are compensable as actual damages, and not speculative in nature like damages for lost opportunities and profits).

We further recognized in *First Empire* that claims which are so uncertain that their worth cannot be easily ascertained are not provable. *Id.* Such is the nature of the claims for lost profits, lost opportunity, and pain and suffering asserted by the Crafts against the receiver. *See, e.g., Office and Professional Employees Intern. Union, Local 2 v. FDIC,* 27 F.3d 598, 604 (D.C.Cir. 1994) (noting speculative nature of claims for

---

**3.** In support of their argument regarding impairment of existing rights, the Crafts also assert that FIRREA treats all contracts alike whether lease agreements or otherwise in establishing damages allowed for repudiation. This assertion is plainly incorrect. FIRREA clearly distinguishes dam-

ages available for repudiated lease contracts from those available in the non-lease context. *Compare* 12 U.S.C. § 1821(e)(3) (non-lease provisions) *with* §§ 1821(e)(4) & (5) (lease provisions); *see also McMillian v. FDIC,* 81 F.3d 1041, 1048 (11th Cir.1996).

lost opportunities and lost profits); *Country Club Assocs. Ltd. Partnership v. FDIC*, 918 F.Supp. 429, 436 (D.D.C.1996) (noting that under the Restatement (Second) of Contracts damages for lost profits on a breach of contract action may not be awarded if based on an estimate that is speculative). Moreover, the district court made a specific factual finding that the Crafts had not established any actual damages such as would be allowable, and the Crafts have not demonstrated that this finding was clearly erroneous.

Thus, we conclude that because the Crafts' claims for damages would not be provable under the pre-FIRREA common law regime, application of FIRREA's damage limitations expressed in § 1821(e)(3) does not impair any substantive rights possessed at the time of contracting within the meaning of *Landgraf*. As such, we apply § 1821(e)(3) to this case as its application is not prohibitively retroactive.

### C. Crafts' Affirmative Defenses

In addition to their claims for damages and offset, the Crafts raised the following affirmative defenses to foreclosure: estoppel, breach of conditions precedent, unclean hands, and failure to mitigate damages. The affirmative defenses are based on the Commitment letter and the Crafts' contention that their obligations under the notes were conditioned upon fulfillment of Montana Federal's obligations under the Commitment Letter. The district court rejected these affirmative defenses on two separate grounds: 1) the contemporaneous execution requirements of FIRREA provision, 12 U.S.C. § 1823(e);[4] and 2) the *D'Oench, Duhme* doctrine.

#### 1. D'Oench, Duhme Doctrine

The *D'Oench, Duhme* doctrine protects the FDIC from unwritten agreements that relieve a debtor of the obligation

to repay a facially unconditional note. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (holding that where debtor lends himself to a scheme or arrangement whereby the banking authority on which the FDIC relied in insuring the bank was, or was likely to be, misled, the debtor is estopped from denying the obligation of a facially unconditional note). Although the Commitment Letter, the notes, and indentures were in writing and within the Bank's files, any understanding that repayment of the notes and indentures was conditioned upon Montana Federal's fulfillment of its obligations under the Commitment Letter was not. Thus, the district court found that the *D'Oench, Duhme* doctrine precluded the Crafts' reliance on an unwritten agreement that their liability under the notes would be relieved.

The district court is incorrect. The *D'Oench, Duhme* doctrine has no application to this case. We held in *Ledo Financial Corporation v. Summers*, 122 F.3d 825 (9th Cir.1997), that the *D'Oench, Duhme* doctrine does not apply where the FDIC acts as a receiver. It acted as receiver in this case. Nonetheless, the Crafts' affirmative defenses to foreclosure still fail. As discussed above, the FDIC acted within its power in rejecting the Commitment Letter. Further, the district court found that the Commitment Letter did not condition the Crafts' obligation to repay their notes on any performance by Montana Federal, or anyone else. It further found that the Crafts failed to prove any of their other defenses premised on wrongful repudiation. The Crafts have not put forth evidence showing these findings to be clearly erroneous. Thus, the affirmative defenses were properly denied, although for incorrect reasons.

### D. Jurisdiction to Review Administrative Claim

The FSLIC's attempts to foreclose on the Craft's indentures began in six sepa-

**4.** Prior to submission of this case, the FDIC abandoned its § 1823(e) argument based on this Circuit's decision in *Resolution Trust Corp. v. Midwest Federal Savings Bank of Minot*, 4 F.3d 1490, 1500 (9th Cir.1993) (holding that interpretation of contemporaneity requirement must be informed by the realities of each commercial transaction). Thus, we decline to address wheth-

er § 1823(e) applies retroactively to this case. *But cf. Oklahoma Radio Assocs. v. FDIC*, 987 F.2d 685, 695–96 (10th Cir.1993) (holding that more stringent requirements of § 1823(e) do not apply retroactively); *RTC v. Guadalupe Plaza*, 918 F.Supp. 1441, 1445–46 (D.N.M.1996) (same).

rate actions, which were eventually consolidated. While those cases were pending, the Crafts also pursued administrative remedies. Following denial of their administrative claim on April 10, 1989, the Crafts filed a de novo action in the district court on April 15, 1989 seeking both tort damages and judicial review of their administrative claim. This action was eventually consolidated with the foreclosure actions, and the Crafts repleaded their claims as counterclaims.

The district court held that it lacked jurisdiction to review the denial of the Crafts' administrative claim. The Crafts do not challenge this decision on appeal except in their Statement of Jurisdiction, where they assert that the district court had jurisdiction pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701–706 to review administrative decisions.

However, in *Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), the Supreme Court held that the administrative procedures promulgated by the FHLBB under the National Housing Act, and specifically 12 U.S.C. § 1729(d) (which was the basis for FSLIC receivership in this case), were not subject to APA review because the FHLBB's and FSLIC's enabling statutes did not provide authority to adjudicate such claims. Instead, the appropriate review of an FHLBB action is de novo action in a court of competent jurisdiction, which is what the Crafts have done here. Under *Coit*, the district court properly concluded that review of FHLBB administrative actions on the Crafts' claims is foreclosed.

### E. Norma Craft's Standing

■ Roger Craft's wife, Norma Craft, was a plaintiff in the complaint filed on April 15, 1989 which became the basis of the Crafts' counterclaims. Although she was a named defendant in some of the foreclosure actions by virtue of her status as co-signer on several notes, the district court held that Norma Craft lacked standing to assert the counterclaims that the United States tortiously violated an implied covenant of good faith and fair dealing which was an implied term of the Commitment Letter.

The district court found that Norma Craft did not participate in the negotiations for, was not a signatory to, nor was she mentioned in, the Commitment Letter itself. We conclude that the district court correctly determined that, inasmuch as she was not a party to the contract that created the allegedly breached duty, Norma Craft does not have standing to assert claims arising from the Commitment Letter.

### F. Craft's Tort Counterclaims

The Crafts asserted several counterclaims against the United States and the FDIC, all of which allege a tortious breach of the implied covenant of good faith and fair dealing. Through the FTCA the United States has waived its sovereign immunity for injuries arising from the tortious acts or omissions of the United States, its agents, and employees. 28 U.S.C. §§ 1346(b), 2674. Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances ... " 28 U.S.C. § 2674. With minor exceptions, FTCA claims are governed "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Since the Crafts claim that the injury occurred in Montana, Montana law applies.

#### 1. Claims against the FDIC

■ The FTCA is the exclusive remedy for tortious conduct by the United States, and it only allows claims against the United States. Although such claims can arise from the acts or omissions of United States agencies (28 U.S.C. § 2671), an agency itself cannot be sued under the FTCA. *Shelton v. United States Customs Service*, 565 F.2d 1140, 1141 (9th Cir.1977) ("It is well established that federal agencies are not subject to suit *eo nomine* unless so authorized by Congress in explicit language."); *Safeway Portland Employees' Fed. Credit Union v. FDIC*, 506 F.2d 1213, 1215–16 (9th Cir.1974). This jurisdictional restriction is not modified by the FDIC's "sue and be sued" jurisdiction. 28 U.S.C. § 2679 ("The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims

which are cognizable under section 1346(b) of this title"); *Safeway Portland Employees' Fed. Credit Union*, 506 F.2d at 1215. Consequently, we dismiss all claims against the FDIC for lack of jurisdiction.

### 2. FTCA Exceptions

 The FTCA's waiver of sovereign immunity is strictly construed in favor of the sovereign, and we may not enlarge its waiver beyond what the statute requires. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). The FTCA provides for specific exceptions to the United States' waiver of sovereign immunity in 28 U.S.C. § 2680. Here, the United States argues that both the discretionary function and the misrepresentation exceptions operate to bar the Crafts' claims.

#### a. Discretionary Function Exception

 Section 2680(a) explicitly preserves the United States' sovereign immunity for acts or omissions "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." As discussed *supra*, the FSLIC properly exercised its discretion to repudiate the loan commitment to Craft.

In *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court held that the discretionary function exception applied to the managerial or operational decisions of federal thrift regulators dealing with a troubled thrift. As noted in *Gaubert*,

> [w]hen established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the

nature of the actions taken and on whether they are susceptible to policy analysis. *Id.* at 324–25, 111 S.Ct. 1267. Here, the FHLBB's decision to approve Montana Federal's Commitment Letter to Craft, as well as the FSLIC's decision to repudiate that agreement, were within the discretion of federal agents who were attempting to implement the policy of the Federal Housing Act and the regulations promulgated by the FHLBB. The Crafts have not overcome the presumption that the decisions of the FHLBB and the FSLIC receiver were within the discretionary function exception of the FTCA. *See, e.g., Phoenix Baptist Hospital and Medical Ctr., Inc. v. United States*, 937 F.2d 452, 453 (9th Cir.1991) (when action is taken pursuant to discretionary statutes, "we presume that the decision ... is grounded in matters of policy").

#### b. Misrepresentation Exception

 Section 2680(h) explicitly preserves the United States' sovereign immunity for claims of misrepresentation and deceit. The Crafts complain that the Government tortiously failed to inform them of the troubled state of Montana Federal and that they have suffered economic loss as a consequence.

We have specifically held, however, that the misrepresentation exception to the FTCA applies "when the plaintiff suffers an economic loss as a result of a commercial decision based on a misrepresentation consisting of either false information or a failure to provide information [which the government] had a duty to provide." *Mt. Homes, Inc. v. United States*, 912 F.2d 352, 356 (9th Cir. 1990); *see also Frigard v. United States*, 862 F.2d 201, 202 (9th Cir.1988) (misrepresentation exception bars "claims arising from commercial decisions based on false or inadequate information provided by the government"). Thus, the district court correctly concluded that the Crafts' tort claims are also barred by the misrepresentation exception to the FTCA.

### 3. Montana's Duty of Good Faith and Fair Dealing

 The United States argues in the alternative that the Crafts can not state a

claim for breach of the implied covenant of good faith and fair dealing under Montana law, which requires that:

(a) a contract existed between the parties;

(b) the parties had a "special relationship";

(c) the defendant's conduct did not meet a standard of honesty in fact and observance of reasonable commercial standards of fair dealing in the trade;

(d) defendant's conduct damaged the plaintiff.

See *Story v. City of Bozeman*, 242 Mont. 436, 791 P.2d 767, 776 (1990).

The Crafts cite several Montana cases that liberally construe contracts, however, they have not demonstrated clear error in the finding of the district court that the United States was not a party to Montana Federal's loan commitment to Roger Craft. Thus, the Crafts' tort claim fails on the first element.

Although the Consent Resolutions entered into by Montana Federal required FHLBB approval of many of the institution's transactions, the district court specifically found that no actual or apparent agency relationship was created between the institution and the Government. Again, we cannot conclude that this finding was clearly erroneous.

Officers of Montana Federal conducted the negotiations with Craft for the benefit of the institution's shareholders and depositors, not for the benefit of the FHLBB. After its own negotiations, Montana Federal then sought the requisite approvals from the FHLBB. The Consent Resolutions were not intended to create an agency relationship, but to allow Montana Federal to continue to operate with federal deposit insurance. Accordingly, under Montana law the United States could not have tortiously breached a duty of good faith and fair dealing to the Crafts because it was not a party to the Commitment Letter. Having concluded that the Crafts' claim fails on the first element, we do not address the district court's findings regarding whether a "special relationship" existed between the Crafts and the Government or any of its agencies.

### III. CONCLUSION

For the foregoing reasons the judgment of the district court is **AFFIRMED**, but for different reasons.

**AFFIRMED.**