**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARK D. WALDRON, Chapter 7 Trustee for Venture Financial Group, Inc., *Plaintiff-Appellee*, v. FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver of Venture Bank, *Defendant-Appellant.* | No. 18-35375 D.C. No. 3:16-cv-05907-RBL OPINION |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted June 10, 2019
Anchorage, Alaska

Filed August 28, 2019

Before:  A. Wallace Tashima, William A. Fletcher,
and Marsha S. Berzon, Circuit Judges.

Per Curiam Opinion

# SUMMARY[*]

## Bankruptcy

The panel reversed the district court's judgment affirming the bankruptcy court's decision after a bench trial in favor of the chapter 7 trustee for the bankruptcy estate of a failed bank's parent company, on a claim for recovery as a preferential transfer of tax refunds obtained by the FDIC, receiver of the failed bank.

Agreeing with other circuits, the panel held that the FDIC's appeal was timely filed within 60 days of entry of the district court's judgment because, even though acting solely as a receiver, the FDIC was a United States agency under Federal Rule of Appellate Procedure 4(a)(1)(B)(ii).

Reversing and remanding, the panel held that the Financial Institutions Reform, Recovery, and Enforcement Act divested the bankruptcy court of jurisdiction because the bankruptcy trustee did not exhaust required administrative remedies before filing the preference action. The panel held that the *Parker* exhaustion exception did not apply because the preference action did not arise incident to the FDIC's collection efforts against the debtor. Declining to expand the *Parker* exception, the panel held that, because the trustee failed to exhaust, the bankruptcy court lacked subject matter jurisdiction over his claims.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Joseph Brooks (argued), Counsel; Katheryn R. Norcross, Senior Counsel; Colleen J. Boles, Assistant General Counsel; Federal Deposit Insurance Corporation, Arlington, Virginia; for Defendant-Appellant.

Andrew H. Morton (argued) and Dillon E. Jackson, Foster Pepper PLLC, Seattle, Washington, for Plaintiff-Appellee.

## OPINION

PER CURIAM:

The Federal Deposit Insurance Corporation ("FDIC") obtained approximately $8.4 million in tax refunds as part of its receivership over a failed bank. The bank's parent company declared bankruptcy. Mark Waldron, the bankruptcy estate's trustee, contended that the tax refunds should be considered part of the bankruptcy estate, and the bankruptcy court agreed. But Waldron did not exhaust the administrative claims process as required by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). We hold that because of the failure to exhaust, the bankruptcy court did not have subject-matter jurisdiction over this dispute.

## I

Venture Bank ("the Bank") is a wholly owned subsidiary of Venture Financial Group, Inc. ("VFG"). For each tax year before 2009, VFG filed consolidated federal tax returns on behalf of both entities, in accordance with a 1993 tax allocation agreement ("TAA") between VFG and the Bank. The TAA set forth guidelines for how the consolidated tax

returns would be handled, specifying that, "[f]or each taxable period, each subsidiary of the Affiliated Group shall compute its separate tax liability as if it had filed a separate tax return and shall pay such amount to the Parent." It further provides that "in the case of a refund, the Parent shall make payment to each member for its share of the refund." The TAA has remained in place and unchanged since its execution.

In September 2009, Washington State banking regulators closed the Bank and placed it into federal receivership; the FDIC was appointed as the Bank's receiver. In July 2011, the FDIC submitted a request to the IRS to allow the FDIC to serve as an alternative agent for the Bank's affiliated group, per Treasury Regulation § 301.6402-7(c). The FDIC sought to file amended tax returns carrying back losses incurred by the Bank and claiming refunds not previously pursued. The FDIC notified VFG of this request. Although VFG objected to "the FDIC being [its] agent with the IRS,"[1] the IRS granted the FDIC's request to act as an alternative agent. Between August 2011 and September 2013, the FDIC filed a series of amended tax returns to recover refunds owed to the Bank.

In October 2013, VFG filed for chapter 7 bankruptcy. Mark Waldron was selected as the chapter 7 trustee. In response to the bankruptcy petition, the FDIC filed a protective proof of claim, declaring that the pending tax refunds were property of the FDIC, not VFG or its

---

[1] VFG did not object to the filing of the amended returns. VFG's letter to the IRS indicated that it planned to file an amended 2009 tax return itself, and acknowledged that "[m]ost of that refund will go to FDIC as Receiver of Venture Bank, and we have no objection to their portion of the refund being paid directly to the FDIC."

bankruptcy estate, but stating a claim for payments from the estate should the VFG or the bankruptcy estate be determined to be owner of the refunds. The FDIC did not file a claim for any amount beyond the tax refunds.

Ultimately, the IRS accepted the FDIC's refund requests and paid the refunds with interest. The IRS paid some of the refunds before VFG filed for bankruptcy, and some after. In total, the FDIC received $8,471,982.36 in tax refunds from the IRS.[2]

In August 2014, Waldron filed this preference action in bankruptcy court against the FDIC, seeking to recover the tax refunds obtained by the FDIC as a preferential transfer. The FDIC moved to dismiss the complaint, arguing, among other things, that the bankruptcy court lacked jurisdiction over Waldron's claims because he had failed to exhaust the administrative claims process as required by FIRREA, Pub. L. No. 101-73, 103 Stat. 183. The bankruptcy court denied the motion.

After a bench trial, the bankruptcy court issued a decision. The court first reiterated its conclusion that it had subject-matter jurisdiction despite Waldron's failure to exhaust administrative remedies, then interpreted the 1993 TAA to "establish[] a creditor-debtor relationship between VFG and the Bank." According to the bankruptcy court, "[a]ny tax refunds received were the property of VFG, and the Bank merely held a claim for payment against VFG for its share of the funds." In so ruling, the bankruptcy court

---

[2] At the FDIC's request, the IRS separately paid $164,485.79 to the VFG, representing its share of the refunds requested in the amended tax returns for 2004 and 2005, with interest. These funds are not in dispute.

rejected the FDIC's argument that the "*Bob Richards* rule" applies in this case. *See In re Bob Richards Chrysler-Plymouth Corp., Inc.*, 473 F.2d 262, 265 (9th Cir. 1973)[3] (establishing the default rule that, absent an agreement to the contrary, tax refunds belong to the entity whose losses formed the basis for the refunds). Thus, the court held, the bankruptcy estate was entitled to the refunds as a voidable preference.

The FDIC appealed the bankruptcy court's decision to the U.S. District Court for the Western District of Washington. The district court affirmed the bankruptcy court's decision and entered final judgment on March 20, 2018. Forty-two days later, on May 1, 2018, the FDIC filed its notice of appeal.

## II

We first discuss whether this appeal is timely under Federal Rule of Appellate Procedure 4. Concluding that it is, we next address whether the bankruptcy court had subject matter jurisdiction in this case. We hold that FIRREA does divest the bankruptcy court of subject matter jurisdiction over this dispute.

---

[3] The United States Supreme Court recently granted certiorari on the validity of this rule. *See Rodriguez v. FDIC*, No. 18-1269, 2019 WL 1470793 (U.S. June 28, 2019) (granting certiorari on the issue of whether courts should determine ownership of a tax refund paid to an affiliated group based on the federal common law *Bob Richards* default rule, as three circuits hold, or based only on the law of the relevant state, as four circuits hold).

**A**

Federal Rule of Appellate Procedure 4(a) provides that, generally, in a civil case, "the notice of appeal . . . must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). But "if one of the parties is . . . a United States agency," then the notice of appeal "may be filed by any party within 60 days . . ." *Id.* r. 4(a)(1)(B)(ii).

Waldron contends that when acting solely as a receiver, the FDIC does not qualify as a "United States agency" within the meaning of Rule 4, so the FDIC's notice of appeal, filed 42 days after final judgment, is untimely. This argument fails.

Every circuit that has considered Waldron's argument has rejected it. *See Diaz v. McAllen State Bank*, 975 F.2d 1145, 1147 (5th Cir. 1992) (the FDIC acting as a receiver is a United States agency under Rule 4); *RSB Ventures, Inc. v. FDIC*, 514 F. App'x 853, 856 (11th Cir. 2013) (per curiam) (same); *Helm v. Resolution Tr. Corp.*, 18 F.3d 446, 448 (7th Cir. 1994) (per curiam) (same). *Diaz* relied on 12 U.S.C. § 1819(b)(1), which provides that "[t]he [FDIC], in any capacity, shall be an agency of the United States for purposes of section 1345 of Title 28,[4] without regard to whether the Corporation commenced the action." 975 F.2d at 1147 n.1 (quoting 12 U.S.C. § 1819(b)(1)).

Our own precedent supports the same conclusion. *In re Hoag Ranches* outlined parameters for determining whether

---

[4] Section 1345 provides original jurisdiction to district courts in civil cases commenced by the United States or a U.S. agency or officer. 28 U.S.C. § 1345.

a litigant is a "United States agency" under Rule 4, as "[t]he term 'agency' is not defined in the Federal Rules of Appellate Procedure[.]" 846 F.2d 1225, 1227 (9th Cir. 1988). *Hoag* identified six factors relevant to this determination:

> (1) the extent to which the alleged agency performs a governmental function; (2) the scope of government involvement in the organization's management; (3) whether its operations are financed by the government; (4) whether persons other than the government have a proprietary interest in the alleged agency and whether the government's interest is merely custodial or incidental; (5) whether the organization is referred to as an agency in other statutes; and (6) whether the organization is treated as an arm of the government for other purposes, such as amenability to suit under the Federal Tort Claims Act.

*Id.* at 1227–28.

All six of the *Hoag* factors suggest that the FDIC is a "United States agency" under Rule 4 when acting as a receiver for a failed bank. First, an FDIC receivership does perform a government function—it "reduc[es] the losses borne by federal taxpayers when federally insured financial institutions . . . fail." *Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir. 1996). Second, the federal government maintains direct involvement in an FDIC receivership. The FDIC's board members, who oversee the FDIC in all capacities (including its receiverships), are appointed by the President with the advice and consent of

the Senate. 12 U.S.C. § 1812(a)(1); *see also id.* §§ 2, 5491. Third, although the operations of the FDIC as receiver are financed by the assets of the failed bank, those funds are essentially government funds, as the FDIC is the successor to any assets not paid out to the failed bank's creditors. *See id.* § 1821(d)(2)(A). Fourth, no entity other than the FDIC has a proprietary interest in an FDIC receivership. *See id.* Fifth, the FDIC as receiver is referred to as a federal agency throughout its enabling act. *See, e.g.*, *id.* §§ 1813(q), 1819(b). Sixth and finally, the FDIC is considered a federal agency under other statutes, including the Federal Tort Claims Act. *Id.* §§ 1819(b)(1), 1822(f)(1)(A); *FDIC v. Craft*, 157 F.3d 697, 706–07 (9th Cir. 1998).

"We recognize that procedural rules are best applied uniformly, and we decline to create a circuit split unless there is a compelling reason to do so." *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003). Under *Hoag* and in accord with the analysis employed by the Fifth, Seventh, and Eleventh circuits, *see, e.g.*, *Diaz*, 975 F.2d at 1147, we conclude that the FDIC is a "United States agency" for purposes of Rule 4, even when acting as a receiver. The FDIC's notice of appeal was timely filed.

## B

We turn to whether FIRREA divested the bankruptcy court of jurisdiction over Waldron's claim. Some background as to the purpose and reach of FIRREA helps to set the stage for this inquiry.

FIRREA was enacted in 1989 "in an effort to prevent the collapse of the [savings and loan] industry." *Washington Mut. Inc. v. United States*, 636 F.3d 1207, 1211 (9th Cir. 2011). "The statute grants the FDIC, as receiver, broad

powers to determine claims asserted against failed banks." *Henderson v. Bank of New Eng.*, 986 F.2d 319, 320 (9th Cir. 1993). Additionally, FIRREA "provides detailed procedures to allow the FDIC to consider certain claims against the receivership estate." *Benson v. JPMorgan Chase Bank*, N.A., 673 F.3d 1207, 1211 (9th Cir. 2012) (citing 12 U.S.C. § 1821(d)(3)–(10)).

FIRREA "requires that a plaintiff exhaust these administrative remedies . . . before filing certain claims," *id.*, by stripping courts of jurisdiction over claims initially brought outside of section 1821's administrative procedures. It provides:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D). FIRREA provides for judicial review after exhaustion. *See* 12 U.S.C. § 1821(d)(6)(A) (if a claimant has exhausted a claim via FIRREA's administrative process, "the claimant may . . . file suit on such claim . . . and [the district] court shall have jurisdiction to hear such claim").

This court recognized an exception to FIRREA's exhaustion requirement in *In re Parker N. Am. Corp.*, 24 F.3d 1145 (9th Cir. 1994). *Parker* held that "the FIRREA claims process does not apply to actions filed in bankruptcy court to recover preferential transfers, *at least where the [FDIC] has filed a proof of claim that exceeds the amount sought to be recovered by the debtor*." *Id.* at 1155 (emphasis added). The FDIC argues that *Parker*'s exhaustion exception is not applicable here, so the bankruptcy court lacked subject matter jurisdiction. We agree.

*Parker* offered varied rationales in support of its exception to FIRREA's exhaustion requirement. Among those rationales are legislative history indicating that FIRREA's claims process was designed for creditors and not debtors of the FDIC, *id.* at 1153; the expertise of bankruptcy courts in determining preference actions, *id.*; and the fact that some preference actions amount to affirmative defenses in certain bankruptcy proceedings, *id.* at 1155. This court backed off from *Parker*'s first rationale in *McCarthy v. FDIC*, which held that FIRREA's jurisdictional bar "is not limited to creditors, but applies as well to debtors with claims . . . that affect the assets of a failed institution." 348 F.3d 1075, 1080 (9th Cir. 2003).

Despite some uncertainty about the scope of *Parker*'s exception stemming from the opinion's multiple rationales, the question before the *Parker* panel, as enunciated by *McCarthy*, was narrow: "whether the bankruptcy court had jurisdiction over the preference action against an institution for which [a predecessor to the FDIC] had filed a proof of claim *that exceeded the amount sought to be recovered by the debtor*." *Id.* at 1078 (emphasis added). The caveat to *Parker*'s actual *holding*—that it may only apply "where the [FDIC] has filed a proof of claim that exceeds the amount

sought to be recovered by the debtor"—reflects the limited question before the court in *Parker*. 24 F.3d at 1155. Notably, *McCarthy* viewed *Parker*'s holding as confined to the precise issue raised in that case, disavowing as inapplicable outside of bankruptcy the extensive discussion in *Parker* regarding the FIRREA exhaustion requirement's applicability to creditors only. *See McCarthy*, 348 F.3d at 1078–79; *Parker*, 24 F.3d at 1152–54.

The upshot is that *Parker*'s precedential effect is much narrower than the rest of the opinion might suggest. *Parker*'s actual holding is that if the FDIC is attempting to collect from a debtor during bankruptcy proceedings an amount greater than the amount that the debtor seeks to recover from FDIC as a preferential transfer, then there is no "claim" against FDIC within the meaning of subsection (D)(i). *See* 24 F.3d at 1155. Instead, in that circumstance, the debtor's preference action is, for purposes of subsection (D)(i), a partial affirmative defense rather than a claim. *Id.* Such a preference action is a partial affirmative defense because it "arises incident to the [FDIC's] *collection* efforts" in bankruptcy and is an "attempt[] to defend [the debtor] from personal liability" on the FDIC's proof of claim. *Id*. at 1153, 1155. Creating an exception to FDIC's jurisdictional bar under these narrow circumstances is justified to avoid "requiring presentment and proof to the [FDIC] of all potential affirmative defenses that might be asserted in response to unknown and unasserted claims or actions by the [FDIC]." *Id*. (quoting *Resolution Tr. Corp. v. Midwest Fed. Sav. Bank,* 4 F.3d 1490, 1496–97 (9th Cir. 1993)).

*Parker* illustrates how a preference action can function as a partial affirmative defense. A bank lent Parker North American Corporation ("PNA") $10 million as part of a sale-and-leaseback agreement. PNA repaid the bank $4.65

million before defaulting. PNA then filed for bankruptcy and sought to recover the $4.65 million as a preferential transfer. In response, the Resolution Trust Corporation ("RTC") (a predecessor to the FDIC), in its capacity as receiver for the bank, filed proofs of claim against PNA "for the balance of the $10 million and for other sums arising from the sale and leaseback transaction," amounting to a total of approximately $14 million. *Id.* at 1148. Once RTC initiated collection efforts, PNA's preference action was converted into a partial affirmative defense. As the concurrence noted, "[a]lthough PNA initiated the preference action, and therefore at one time may have appeared to be using that action as something more than an affirmative defense, subsequent events have made it clear that the preference action will lead at most to a setoff" rather than an affirmative recovery of funds. *Id.* at 1156 (B. Fletcher, J., concurring).

Here, in contrast, Waldron's claim seeking to recover the tax refund from the FDIC is not an affirmative defense. Unlike in *Parker*, the FDIC never initiated collection efforts against VFG, nor has it asserted any non-contingent claim against the bankruptcy estate. Instead, it is the FDIC that is attempting to avoid liability to VFG's bankruptcy estate, which is affirmatively seeking to recover the refund from the FDIC. Although the FDIC filed a proof of claim, that claim equals the amount sought to be recovered by Waldron and functions solely as a protective measure in the event that it is determined that the refund belongs to VFG's bankruptcy estate. The present case is thus quite different from *Parker* because it does not involve "a preference action which arises incident to the [FDIC]'s *collection* efforts against the debtor." *Id.* at 1153.

As *Parker*'s narrow holding does not apply here, we consider whether to expand its exception to FIRREA to cover the present circumstances. We decline to do so.

We note, first, that the *Parker* exception is a judicially created one, inconsistent with the language of FIRREA creating an exhaustion requirement. *McCarthy* so noted, observing that "'we do not think [*Parker*'s] construction of the § 1821(d)(13)(D) jurisdictional bar quite squares with the statutory text.'" 348 F.3d at 1079 (quoting *Freeman v. FDIC*, 56 F.3d 1394, 1401 (D.C. Cir.1995). The statute's text, again, specifies:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D).

*Parker* discussed only subsection (D)(i), while both subsections (D)(i) and (D)(ii) are applicable in this case. 24 F.3d at 1154. In *Parker,* PNA's preference action did not fall under (D)(ii) because it did not relate to an "act or omission" of the bank or the RTC as receiver. In contrast,

Waldon's preference action does fall under (D)(ii) because it relates to the FDIC's act of filing amended tax returns.

The double application of the FIRREA exhaustion requirement in this case reinforces rather than detracts from the evident tension between *Parker* and FIRREA's firm exhaustion provision. It is certainly not a reason to expand *Parker* to cover circumstances in which the proof of claim does not exceed the amount the debtor seeks to recover in a preference action.

That reluctance is reinforced by the fact that *Parker*'s other surviving rationale[5]—in addition to the consideration that the preference action in *Parker* was a partial affirmative defense to a collection claim filed in the bankruptcy—was the special expertise of bankruptcy courts. *Parker* observed: "Bankruptcy courts have expertise in determining preference actions, which involve legal matters unique to the Code.[6] The [FDIC], on the other hand, has no special skill in determining bankruptcy questions and, in fact, would be under no obligation to apply bankruptcy law to a debtor's preference complaint." 24 F.3d at 1153. So recognizing, *Parker* sought to "harmonize the [Bankruptcy] Code and FIRREA and permit bankruptcy courts to determine matters

---

[5] As noted, *McCarthy* did not accept *Parker*'s suggestion that FIRREA's jurisdictional bar applies only to creditors and not debtors of the FDIC. 348 F.3d at 1080.

[6] To establish a preference action, the transfer must be "to or for the benefit of a creditor," for an "antecedent debt," "made while the debtor was insolvent" and within ninety days of filing for bankruptcy, and it must enable the creditor to receive more than its proportionate share of the debtor's assets. 11 U.S.C. § 547(b).

in which they, and not the [FDIC], have specific expertise." *Id*. at 1155–56.

*Parker*'s emphasis on bankruptcy court expertise has little salience here. In *Parker*, no matter how the court ruled on the preference petition, the RTC had a remaining claim against PNA's bankruptcy estate concerning the single transaction involved in the preference action. That claim needed to be addressed by the bankruptcy court in any event. And the context of that claim—an ordinary commercial transaction—was one that routinely arises in bankruptcy preference actions.

The bankruptcy context is of little significance in this case. The FDIC's contingent proof of claim here was entirely predicated on the success of the VFG estate's assertion of ownership of the tax refunds obtained as a result of the FDIC's filings with the IRS. No issue requiring interpretation of the preference provisions of the bankruptcy code or determination of any claim in bankruptcy will arise if Waldron's assertion of ownership fails. Resolving that ownership question involves applying fairly arcane questions of federal tax law concerning the concept of consolidated filing groups, intertwined with a federal default ownership rule that can be overridden pursuant to state contract law. *See Bob Richards*, 473 F.2d 262. As no bankruptcy law or rule or bankruptcy claim-related determination will be relevant in resolving the critical ownership dispute, that dispute is not a matter as to which "bankruptcy courts . . . have specific expertise." *See Parker*, 24 F.3d at 1155–56.

In sum, we conclude that although *Parker*'s reasoning may be wide-ranging, its holding is not applicable and its other extant rationale—bankruptcy court expertise—is not here pertinent. Waldron needed to exhaust the administrative

remedies provided under FIRREA with regard to its assertion of ownership of the tax refunds before going to court. Because Waldron failed to exhaust, the bankruptcy court lacked subject-matter jurisdiction over Waldron's claims.

## III

The bankruptcy court erred when it decided that it had subject matter jurisdiction in this case, and the district court erred when it affirmed that decision. **REVERSED** and **REMANDED** for proceedings consistent with this opinion.